Dear Secretary Reilly:
You have requested an opinion of the Attorney General relative to the Louisiana Enterprise Zone Act. At issue is whether, under the laws comprising the Act and the contract existing between the City Parish government of East Baton Rouge Parish (City Parish) and Rhone Poulenc (Rhone), Rhone is entitled to a refund of local sales and use taxes by the City Parish.
The City Parish is taking the position that Rhone has waived its right to claim approximately $800,000.00 (eight hundred thousand dollars and 00/100) in tax refunds due to its failure to timely file tax refund affidavits with the City Parish Finance Department in accordance with the provisions of its contract.
Rhone argues that its affidavit filings were, for the most part, timely and, further, that it was assured by representatives of the City Parish that funds were being escrowed for future rebates on the basis of telephone estimates furnished by Rhone.
This office has received legal memoranda submitted on behalf of the City Parish and Rhone. In addition, we are in receipt of, and have reviewed, copies of correspondence between the two parties and the enterprise zone contracts between Rhone and the City Parish and Rhone and the State of Louisiana, Board of Commerce and Industry (B.C.I.).
FACTS
In 1988, Rhone applied to the B.C.I. and the City-Parish for Enterprise Zone Recognition for the construction of an artificial vanilla ("vanillin") plant facility. The total project was comprised of three phases. The City-Parish contract encompassed all three phases. B.C.I. initially approved the first phase and required the second and third phases to be applied for at the time of commencement of construction. The B.C.I. contract relating to Phases II and III was subsequently approved by the Governor on November 24, 1992.
Under the provisions of the City-Parish contract, Rhone is entitled to a refund of sales and use taxes imposed by the City-Parish on supplies and materials used in the construction of the plant, and on machinery and equipment used for the project. The refunds were to be obtained by the filing of monthly affidavits with the City-Parish Finance Department detailing all purchases through the last day of the month in which the purchases were made.
The contract further provides that the affidavits must be filed by Rhone within 60 days following the end of each calendar month in which the purchases were made. Upon written request, a 60-day extension could be granted in writing by the City-Parish. Failure to file the affidavit(s) timely constituted a waiver of refund(s) for the month(s) for which they were due.
Rhone requested, and was granted, 60-day extensions on the submission of all but three affidavits, the later of which were filed within the initial 60-day period. In June, 1992, Rhone submitted amended affidavits reflecting miscellaneous invoices for purchases allocated to Phase I which it inadvertently failed to submit, timely. Rhone also filed two affidavits on January 22, 1993, representing purchases made for Phases II and III. These affidavits did not reflect the months in which the purchases were made, but rather specified that they encompassed the "Entire Vanillin Phase II Project".
The City-Parish rejected Rhone's amended affidavit for miscellaneous invoices incurred during Phase I and the Phase II and III affidavits on the basis of their being untimely filed.
LAW
We find the following provisions of the City-Parish/Rhone contract to be material and relevant to the issues at hand:
 "Refunds will be secured by filing of affidavits for each calendar month with the Finance Department of the City-Parish.
* * *
 The affidavits will be filed on forms or in such other manner as is prescribed by the City-Parish Department of Finance.
* * *
 Contractor agrees that it shall file affidavits for tax refunds within sixty (60) days following the end of each calendar month during which purchases subject to tax rebates are made. If impractical to file such affidavits within this specified time period, Contractor shall notify the City-Parish Finance Department in writing and shall specify the time period within which it expects to file the required affidavits. A copy of Contractor's notification shall be submitted to the City-Parish Division of Community and Economic Development. An extension of up to sixty (60) days may be granted by the City-Parish Finance Department, at its sole option, provided that such extension is confirmed in writing to Contractor.
 The requirement to file monthly tax refund affidavits shall commence sixty days after the last day of the month in which the Contractor executes this agreement and the first rebate affidavit shall include all purchases through the last day of the month in which this agreement is executed.
 Contractor agrees that failure to file tax refund affidavits with the City-Parish Finance Department within the specified time period, including any extensions granted by the Finance Department, shall ipso facto constitute a waiver of any claims for sales and use tax refunds applicable to the calendar month for which affidavits were due.
* * *
 It is further agreed that this contract shall only take effect for those components of the Enterprise Zone Project, as defined in this contract, for which Enterprise Zone participation is granted to the Contractor by the State of Louisiana."
We find the following statutory provisions and B.C.I. rules and regulations to be material and relevant to the disposition of these issues:
R.S. 51:1782. Declaration of purpose
 The legislature of Louisiana hereby finds and declares that the health, safety, and welfare of the people of this state are dependent upon the continued encouragement, development, growth, and expansion of the private sector within the state and that there are certain depressed areas in the state that need the particular attention of government to help attract private sector investment into these areas. Therefore, it is declared to be the purpose of this Act to stimulate business and industrial growth in the depressed areas of the state by the relaxation of government controls, by providing assistance to businesses and industries, and by providing tax incentives in these areas.
R.S. 51:1787. Incentives
 A. The board, after consultation with the secretaries of the Department of Economic Development and Department of Revenue and Taxation, and with the approval of the governor, may enter into contracts not to exceed five years to provide:
 (1) For the rebate of sales and use tax imposed by the state and imposed by its local governmental subdivisions upon approval of the governing authority of the appropriate municipality or the appropriate parish where applicable, or both, of the purchases of the material used in the construction of a building, or any addition or improvement thereon, for housing any legitimate business enterprise and machinery and equipment used in that enterprise. Final application for the payment of any rebate of sales and use taxes granted pursuant to this subsection must be filed no later than six months after receipt of the project completion report as provided by rule by the Department of Economic Development. The amount to be rebated shall in no case be greater than the total of the actual amount of the sales and use taxes paid.
B.C.I. Rule Section 927. Rebates on Sales and Use Taxes
* * *
 C. . . . local sales and use tax rebates will be handled in the manner prescribed by the local taxing authority.
DISCUSSION
Initially, it should be noted that the legislature has unequivocally declared by its enactment of the Louisiana Enterprise Zone Act, that the development and expansion of the private sector within this state will be most beneficial to the health, safety, and welfare of its citizenry. As expressly stated in R.S. 51:1782, the purpose of this legislation is to actively encourage and attract private sector investment and, to this end, relax and/or minimize government control and provide tax incentives. With this overriding policy in mind, we turn now to the City-Parish/Rhone contract.
As previously noted, the contract provides for local sales and use tax rebates secured by the filing of affidavits on forms or in such other manner prescribed by the City-Parish. In an effort to avoid the incurring of "open ended" obligations and unknown liabilities, the City-Parish established a procedure for the filing of affidavits. This procedure, requiring the timely filing of affidavits detailing the amount of rebate requested, was set forth in the contract between the City-Parish and Rhone. As provided by the contract, the failure to file the tax refund affidavits within the 60-day grace period, including any extensions, ". . . shall ipso facto constitute a waiver of any claims for sales and use tax refunds applicable to the calendar month for which affidavits were due." We do not find these contractual provisions to be unduly burdensome on Rhone, but rather consistent with B.C.I.'s rules and regulations stating that local sales and use tax rebates shall be handled in the matter prescribed by the local taxing authority.
Rhone followed the procedures set out in the contract for refunds attributable to Phase I of the project, with the exception of the miscellaneous invoices submitted by amended affidavits. With regard to the refunds emanating from those invoices, we find that, under the terms of the contract, Rhone has waived any and all claims therefor. The subject affidavits were not submitted within the 60-day grace period, including extensions, as called for by the contract.
The affidavits submitted in connection with Phase II (which was executed simultaneously with Phase III) are somewhat problematical. As previously noted, Rhone submitted two affidavits for purchases allocated to Phases II and III. The affidavits did not specify the months in which purchases were made, but rather reflected that they related to the entire Vanillin Phase II project. The affidavits were filed by Rhone on January 22, 1993.
The City-Parish takes the position that the affidavits were not filed timely. Rhone asserts that, under the terms of the contract, the affidavits were filed within 60 days of the date the state granted approval for Phases II and III, thereby constituting a timely filing.
In addition to the statutory, regulatory, and contractual provisions previously cited, we find the following articles of the Louisiana Civil Code pertinent to the issue presented:
Art. 2045. Determination of the intent of the parties
 Interpretation of a contract is the determination of the common intent of the parties.
Art. 2047. Meaning of words
 The words of a contract must be given their generally prevailing meaning.
 Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.
Art. 2050. Provisions interpreted in light of each other
 Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.
 Art. 2053. Nature of contract, equity, usages, conduct of the parties, and other contracts between same parties
 A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of the contracts of a like nature between the same parties.
Art. 2055. Equity and usage
 Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
 Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.
Art. 2056. Standard-form contracts
 In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
 A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
Guided by the above codal provisions of contract interpretation, this office has reviewed the City-Parish/Rhone contract and finds merit in Rhone's argument. As previously noted, the form contract, drafted by the City-Parish, contains the following provision:
 "It is further agreed that this contract shall only take effect for those components of the Enterprise Zone Project as defined in this contract, for which Enterprise Zone participation is granted to the Contractor by the State of Louisiana."
We believe the above provision can reasonably be interpreted to mean that the contract, including the provisions relating to the filing of affidavits, did not take effect for Phases II and III until said phases were approved for participation in the Enterprise Zone Program by the State of Louisiana. R.S.51:1787(A) provides, in pertinent part, the following:
 "A. The board, after consultation with the secretaries of the Department of Economic Development and Department of Revenue and Taxation, and with the approval of the governor, may enter into contracts not to exceed five years to provide:" (Emphasis added.)
The contract between B.C.I. and Rhone reflects that it was approved by the Governor on November 24, 1992. The affidavits in question were filed on January 22, 1993, or within the 60-day grace period stipulated in the City-Parish contract. We believe this conclusion is further supported by the primary purpose of the Enterprise Zone Act to encourage private sector investment through the relaxation of governmental controls.
While there is disagreement between representatives of the City-Parish and Rhone regarding monthly telephone estimates transmitted by Rhone and received by the City-Parish, the City-Parish did, in fact, establish an escrow refund account for Phases II and III. The account was subsequently cleared and closed for reasons unknown. If it can be satisfactorily shown that the City-Parish was accepting telephone estimates in lieu of affidavits, pending state approval of Phases II and III, Rhone's position would be further enhanced under the doctrine of equitable estoppel.
In summary, it is the opinion of this office that the amended affidavits for miscellaneous invoices incurred during Phase I were not timely filed.
Accordingly, under the terms of the City-Parish contract, Rhone waived its claims for sales and use tax refunds applicable to the months for which the affidavits were due.
We further opine that the affidavits submitted for Phases II and III were filed within 60 days of the date the state approved the Enterprise Zone contract for said phases.
Trusting this answers your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB Assistant Attorney General
BY: ROBERT E. HARROUN, III Assistant Attorney General RPI/Rob3/bb 0313R